UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE MORRIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RONALD DAVIS,<br><br>　　　　Defendant. | Case No. 15-cv-03901-JST<br><br>**ORDER OF PARTIAL DISMISSAL;<br>ORDER TO SHOW CAUSE** |

Petitioner, a state prisoner incarcerated at San Quentin State Prison and proceeding pro se, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He has paid the filing fee.

## DISCUSSION

**A.     Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

**B.     Petitioner's Claims**

According to the petition, Petitioner is in custody serving a seven-year-to-life sentence with possibility of parole following a 1978 conviction for first degree murder, Cal. Penal Code §

187.[1]  See Docket No. 1 ("Pet.") at 1–2 and 10.[2]  In the instant action, Petitioner challenges the 2012 decision by the California Board of Parole Hearings ("BPH") finding him unsuitable for parole.  Petitioner raises the following claims: (1) the parole denial renders his sentence disproportionate to his crime in violation of the Eighth Amendment; (2) the BPH acted as a biased decision-maker in denying parole, in violation of Plaintiff's due process rights to a fair tribunal; and (3) the BPH's five-year deferral of his next parole hearing violated the Ex Post Facto Clause.

     **1.**     **Eighth Amendment Proportionality Claim**[3]

This claim must be dismissed for the simple reason that life in prison for a murder by an adult does not violate the Eighth Amendment.  "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  Ewing v. California, 538 U.S. 11, 20 (2003) (citing Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  "[O]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare."  Solem v. Helm, 463 U.S. 227, 289–90 (1983) (emphasis in original) (internal quotation marks and citation omitted); see also Lockyer v. Andrade, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").  A sentence of life in prison (or seven-years-to-life) for a murder does not lead to an inference of gross disproportionality and therefore does not amount to cruel and unusual punishment forbidden by the Eighth Amendment.  See Harris v. Wright, 93 F.3d 581, 584–85 (9th Cir. 1996) (sentence of life without parole for 15-year-old murderer does not raise inference of gross disproportionality); United States v. LaFleur, 971 F.2d 200, 211 (9th Cir. 1991) ("Under

---

[1] Petitioner was also convicted of robbery, Cal. Penal Code § 211; burglary, id. § 459; firearm possession by a felon, id. §12021, as well as several weapon enhancements.  The court stayed sentencing on all counts except the murder conviction.  See Pet. at 10.

[2] Because the petition is not consecutively paginated, the references to pages of filed documents are to the page numbers that are automatically assigned by the Court's electronic filing system and appear in the upper right-hand corner of the pages of filed documents.

[3] To the extent that Petitioner claims that his sentence is disproportionate in violation of California law, California statutes, and article I, section 17 of the California Constitution, see Pet. at 17–27, such state law claims are not cognizable in federal habeas.  Swarthout v. Cooke, 562 U.S. 216, 219 (2011).  Federal habeas relief is only available where a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

1  Harmelin, it is clear that a mandatory life sentence for murder does not constitute cruel and
2  unusual punishment").[4]
3       Moreover, as a general matter, "so long as the sentence imposed does not exceed the
4  statutory maximum, it will not be overturned on eighth amendment grounds." United States v.
5  McDougherty, 920 F.2d 569, 576 (9th Cir. 1990). Here, Petitioner's sentence has not exceeded
6  the statutory maximum. Petitioner's sentence of seven-years-to-life carries no guaranteed parole
7  date, and carries with it the potential that he could serve the entire term. See Pearson v. Muntz,
8  639 F.3d 1185, 1187 (9th Cir. 2011) ("Under California law, prisoners [ ] serving indeterminate
9  life prison sentences (i.e., those whose life sentences do not include 'without the possibility of
10 parole') 'may serve up to life in prison, but become eligible to be considered for parole after
11 serving minimum terms of confinement.'") (citing In re Dannenberg, 34 Cal. 4th 1061, 1078 (Cal.
12 2005)). Petitioner responds that his term exceeds the statutory minimum because it exceeds the
13 base term set forth in section 2403(c) of the California Code of Regulations, title 15. However,
14 this section pertains to the base term of confinement utilized by the BPH once an inmate is found
15 suitable for parole. See 15 Cal. Code Regs. § 2403. Because Petitioner has not been found to be
16 suitable for parole, section 2403 has no application here. Id.; see also Paddock v. Mendoza-
17 Powers, 674 F. Supp. 2d 1123, 1128–29 (C.D. Cal. 2009) Petitioner's continued incarceration
18 under the terms of his life-maximum sentence does not violate the Eighth Amendment under
19 applicable case law. This claim is dismissed with prejudice.
20     **2. Due Process Claim**
21      Petitioner argues that the BPH showed clear bias "by having the predetermined judgment
22 that Petitioner must first identify his former crime partner before he will be found suitable for

---

[4] The Supreme Court and Ninth Circuit have upheld life sentences for crimes less serious than murder. See, e.g., Cocio v. Bramlett, 872 F.2d 889, 897–98 (9th Cir. 1989) (25-year-to-life sentence for manslaughter conviction not unconstitutional); Lockyer, 538 U.S. at 73-77 (finding that recidivist habeas petitioner's sentence of two consecutive terms of 25 years to life for petty theft was not contrary to, nor unreasonable application of, Supreme Court's "gross disproportionality principle"); Alford v. Rolfs, 867 F.2d 1216, 1220–23 (9th Cir. 1989) (15-year-to-life sentence for a habitual offender convicted for possession of stolen property not unconstitutional); Harmelin, 501 U.S. at 1004–05 (life imprisonment without possibility of parole for possession of 672 gram of cocaine raises no inference of gross disproportionality) (Kennedy, J., concurring).

parole." Pet. at 27. A prisoner is entitled to have his release date considered by a parole board that is free from bias or prejudice. O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir. 1990); see also Morrissey v. Brewer, 408 U.S. 471, 489 (1972). Liberally construed, this claim is cognizable and merits an answer from Respondent.

### 3. Ex Post Facto Claim

Petitioner argues that the BPH's five-year deferral of his next parole hearing pursuant to Marsy's Law violated the Ex Post Facto Clause by increasing his risk of punishment. He further argues that the five-year deferral was intended to punish him for refusing to divulge the name of his partner in crime. In support of this argument, Plaintiff notes that he had never had a parole hearing deferral that exceeded three years.

Marsy's Law was approved by California voters in 2008 and, in relevant part, modified the availability and frequency of parole hearings and was codified in section 3041.5 of the California Penal Code. Prior to the enactment of Marsy's Law, the BPH heard each case annually unless it deferred the next hearing for two or five years. See Cal. Penal Code § 3041.5(b)(2) (2008). Marsy's Law provides that the BPH will hear each case every fifteen years unless it opts to schedule the next hearing in three, five, seven, or ten years. See Cal. Penal Code § 3041.5(b)(3) (2010).

The Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. For purposes of this case, an "ex post facto" law is one "'that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" Peugh v. U.S., 133 S. Ct. 2072, 2078 (2013) (quoting Calder v. Bull, 3 Dall. 386, 390 (1798)). The controlling inquiry in examining a change to a parole law is "whether retroactive application of the change . . . create[s] 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Garner v. Jones, 529 U.S. 244, 250 (2000) (quoting Cal. Dept. of Corr. v. Morales, 514 U.S. 499, 509 (1995)). A "speculative, attenuated risk" of prolonging incarceration does not establish a violation of the Ex Post Facto Clause. Morales, 514 U.S. at 509–10.

Morales and Garner comprise the "clearly established Federal law, as determined by the

1  Supreme Court," for § 2254(d) purposes. Both those cases upheld amendments that decreased the
2  frequency of parole hearings.

3        In Morales, the statutory amendment "introduced the possibility" that the parole authority
4  would not have to hold annual parole hearings, Morales, 514 U.S. at 507, if the prisoner has been
5  convicted of "more than one offense which involves the taking of a life" and if the Board "finds
6  that it is not reasonable to expect that parole would be granted at a hearing during the following
7  years and states the bases for the finding." Id. at 503 (citing Cal. Penal Code § 3041.5(b)(2)
8  (1982)). However, the amendment did not increase the statutory punishment for the offense; did
9  not change the substantive formula for securing a reduction of the sentence; did not change the
10 standards for fixing the prisoner's minimum eligible parole date; and did not change the standards
11 for determining his suitability for parole or for setting his release date. Id. The parole board also
12 retained the authority to allow a parole hearing earlier than the next regularly scheduled hearing
13 date, i.e., an expedited hearing might be held upon the request of a prisoner. See id. at 512. The
14 Morales Court held that the amendment did not violate the Ex Post Facto Clause because the
15 amendment "create[d] only the most speculative and attenuated risk of increasing the measure of
16 punishment attached to the covered crimes." Id. at 514.

17       In Garner, the Court considered a Georgia amendment that allowed the parole board to
18 schedule a parole hearing for a life prisoner as infrequently as once every eight years, whereas the
19 law in place at the time of the prisoner's crime required a parole hearing every three years. See
20 Garner, 529 U.S. at 247. Although the amendment in Garner was harsher than that in Morales – it
21 permitted a lengthier delay between parole hearings, applied to all life prisoners, and afforded
22 fewer procedural safeguards — the Supreme Court found that these differences were "not
23 dispositive." See id at 251. The Garner Court found that the statute did not, on its face, show a
24 sufficient risk of an increased measure of punishment because the amendment vested the parole
25 board with discretion as to how often to set the parole hearings, with eight years for the maximum,
26 and because the parole authority's policies allowed for expedited parole review in the event of a
27 change in the prisoner's circumstances or parole suitability. Id. at 254–55.
28       In Gilman v. Schwarzenegger, 638 F.3d 1101 (9th Cir. 2011), the Ninth Circuit considered

5

an ex post facto challenge to Marsy's Law.  Applying the reasoning set forth in Morales and Garner, the Ninth Circuit found that even if the extensive changes to the frequency of parole hearings required by Marsy's Law appeared to create a significant risk of prolonging plaintiffs' incarceration, the availability of advance hearings precluded federal injunctive relief because such availability sufficiently reduced the risk of increased punishment for prisoners.  See Gilman, 638 F.3d at 1108–11 (also noting that the Board may decide *sua sponte* to hold an advance hearing or do so at the request of a prisoner, and that the Board's decision to deny a prisoner's request for an advance hearing is subject to judicial review). Furthermore, as in Morales and Garner, the changes brought about by Marsy's Law did not substantively change parole for existing prisoners. Marsy's Law "did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole." Id. at 1107.  Accordingly, this Court finds that Petitioner's Ex Post Facto claim fails to state a claim for habeas relief.

**CONCLUSION**

1. The Clerk shall mail a copy of this order and the petition, with all attachments, to the respondent and the Respondent's attorney, the Attorney General of the State of California. The Clerk shall also serve a copy of this order on Petitioner.

2. Respondent shall file with the Court and serve on Petitioner, within **ninety-one (91) days** of the issuance of this order, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be granted based on the due process claim found cognizable herein.  Respondent shall file with the answer and serve on Petitioner a copy of all portions of the state parole record that have been transcribed previously and that are relevant to a determination of the issues presented by the petition.  If Petitioner wishes to respond to the answer, he shall do so by filing a traverse with the Court and serving it on Respondent within **twenty-eight (28) days** of the date the answer is filed.

3. Respondent may file, within **ninety-one (91) days**, a motion to dismiss on procedural grounds in lieu of an answer, as set forth in the Advisory Committee Notes to Rule 4 of the Rules Governing Section 2254 Cases.  If Respondent files such a motion, Petitioner shall file

1  with the Court and serve on Respondent an opposition or statement of non-opposition within
2  **twenty-eight (28) days** of the date the motion is filed, and Respondent shall file with the Court
3  and serve on Petitioner a reply within **fourteen (14) days** of the date any opposition is filed.

4      4.    Petitioner is reminded that all communications with the Court must be served on
5  respondent by mailing a true copy of the document to Respondent's counsel.  Petitioner must keep
6  the Court informed of any change of address and must comply with the Court's orders in a timely
7  fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant
8  to Federal Rule of Civil Procedure 41(b).  See Martinez v. Johnson, 104 F.3d 769, 772 (5th Cir.
9  1997) (Rule 41(b) applicable in habeas cases).

10  **IT IS SO ORDERED.**

11  Dated:  December 29, 2015



JON S. TIGAR
United States District Judge